## HUMPHREYS *v.* CARAWAY.

A deed of trust made by a citizen of Mississippi, to lands situated in Louisiana, authorizing the trustee to sell the lands on the request of the beneficiaries, should they have to pay anything on account of the grantor, is not such a form of trust as our laws repudiate.

APPEAL from the District Court of the parish of Bossier, *Jones*, J.

The following extract from the deed shows the precise character of the "trust."—[REP.]

To have and to hold the aforesaid tracts or parcels of ground, and their appurtenances, and the said slaves unto them, the said parties of the second part, their heirs, executors and administrators forever, upon trust and confidence for the following purposes hereinafter expressed, and for none other: That is to say, if all the above-mentioned debts, on which said parties of the third part are held and bound as security for said *White Turpin & Nephew*, and *White Turpin*, shall be paid off, discharged and fully satisfied in any way without said parties of the third part, or any or either of them, sustaining any loss or damage in consequence of their being bound as security aforesaid, then, and in that event, the estate hereby created, granted and conveyed, shall be defeated and fail. But in the event that any of the said parties of the third part having to pay any of the aforesaid debts, on which they are bound as security for said *White Turpin*, or *White Turpin & Nephew*, or in the event that any one or more of said parties of the third part having to pay and paying any debt for said *White Turpin & Nephew*, or for said *White Turpin*, or in the event that any or more of the parties of the third part having to pay or paying any debt for said *White Turpin & Nephew*, or *White Turpin*, not herein mentioned and described, or in the event of any one or more or all of said parties of the third part sustaining any loss, damage, costs and expenditures of money by reason of having become bound as security as aforesaid for said *White Turpin & Nephew*, or for said *White Turpin*, then it shall be lawful far said parties of the second part, or the survivor of them, his executors or administrators, and they are hereby empowered and fully authorized, (if required so to do,) by any or more of said parties of the third part, who at the time of making such requisition, shall have paid any sum or sums of money as security as aforesaid, to enter upon said lands and take possession thereof, and also of the said slaves, without hindrance, prevention or delay of any one; and to expose to sale by public vendue, and outcry, to the highest and best bidder for cash, so much of the said lands and slaves, or either of them, as may be deemed necessary to satisfy the claims of said party or parties, making the requisitions of sale, proportionally to the whole amount for which said parties of the third part are jointly and severally bound as security for said *White Turpin & Nephew*, or said *White Turpin*, and the surplus remaining after making such proportionable payment, as aforesaid, to the party or parties making such requisition of sale, and defraying the costs and expenses of publication, sale and passing titles, which cost the said parties of the second part, or the survivors of them, his executors and administrators, are authorized and fully empowered to do, to be held in trust by said parties of the second

HUMPHREYS
*v.*
CARAWAY.

part, or the survivor of them, his executor or administrator, for the proportionab le payment of such other of the above-named debts, as may, at the time of said sale, remain due and unsatisfied ; and in all cases of sale the said parties of the second part shall give six months previous public notice of the time, place, and terms of sale, by publication, in some newspaper published in the county of Claiborne. And it is further expressly understood and provided, that the property herein conveyed shall, when sold, if sold at all, and reduced to money, be applied *pro rata* upon and to the payment of the several debts, which the said parties of the third part may have paid or are liable to pay by reason of their being bound and held as security aforesaid ; and it is further provided, with a view to make the property herein described serve as valuable a purpose as possible, that the said parties of the second part, trustees as aforesaid, may make sale of the said property, or portions thereof, upon a credit, by first obtaining in writing the consent of that number of the said parties of third part who are held and bound as security for more than one-half of said above-mentioned debts, that is to say more than one-half of the gross amount of said debts, and said credit is to be regulated at the discretion of the said parties giving their consent ; and it is further provided, that the said parties of the first part may, at any time, sell the property, or portions thereof, by first obtaining the consent of the parties as expressed in the last proviso above, and the proceeds arising under such sale shall be applied *pro rata* to the payment and liquidation of the debts for which said parties of the third part are bound as securities. And the said parties of the second part, trustees as aforesaid, after disposing of the proceeds of said sale or sales as above contemplated, passing title and giving possession, are required to render a full account of their actings and doings to said parties of the first part, their heirs, executors or administrators, and to avoid all unnecessary suits, or costs, or difficulties that may arise hereafter. It is hereby declared and understood, that upon its appearing that the sale or sales, and the application of the money arising therefrom, have been made as is above specified and directed, well and faithfully, and the title executed by said trustees, as is above authorized, then shall the purchaser or purchasers be and remain in full, quiet and undisturbed possession of the aforesaid property, both real and personal, or such part thereof as may be sold, without claim of said parties of the first part, or any person or persons claiming by, through or under them.

In witnes whereof, the said parties of the first part have hereunto set their hands and affixed their seals the day and year first above written.

Signed and sealed in
the presence of:

WHITE TURPIN, [Seal.]
LAVINIA TURPIN, [Seal.]
SAML. COBURN. [Seal.]

*Roysdon*, for plaintiff: Cited, 4th L. 213. *Young* v. *Templeton*, 4 An. *Chewning* v. *Johnson*, 5th An. 679.

*Looney*, for defendant and appellant:

This brings us to the consideration of the deed in trust offered in evidence by the plaintiff. In the first place, if this deed in trust did not show a contract forbidden by the laws of Louisiana, and if our courts had not repeatedly refused to recognize such documents as transferring any property in this State, and as a matter of comity our courts would give them the effect sought for in this case, then the deed now under consideration could not bind the defendant unless it were clearly proven that the suspensive or resolutory conditions had actually happened and transpired. It certainly is incumbent on the plaintiff to show that these very debts which the deed in trust was given to secure, were not only not paid by the said *White Turpin*, but that they were paid by said party or parties of the third part, or at least that said party of the third part, some one, more, or all of them, did suffer some expenditure of money in consequence of their becoming bound as surety to said *White Turpin & Nephew* and the said *White Turpin*. These debts have long since been paid or they are prescribed, and the law certainly presumes that they were discharged by the original debtor, unless the contrary be shown ; and if so discharged, the deed is defeated by its own terms, and the property thus suspended reverts to *White Turpin* or his representatives, if any title ever passed out of him. And if our law could give the contract, the credit of being a transfer at all, we sub-

mit to your honors that it was a transfer to *Coburn* and *Dunbar* jointly—a joint interest, though it may have been for others, still, it was a transfer jointly, and to be received jointly and disposed of jointly, and *Coburn* as vendee could not transfer a greater interest than was vested in him, and if he could transfer any title whatever it could only be one undivided half of the entire property of which he was the joint vendee with said *Dunbar*. Our law abhoring contracts of substitutions, could only consider him in the light of an ordinary vendee.

But defendant contends that the deed in trust conveyed no title or property out of *White Turpin*, but was at most a mortgage given to secure *David H. Humpreys* and others against certain liabilities they were under, as sureties for said *White Turpin & Nephew* and the said *White Turpin*. There is nothing in said deed to show that the parties of the third part ever accepted the stipulations made in their favor. *Yates* v. *Phipps*, 5 An. 124; C. C. 1794, 1796, 1803.

And further, the property mortgaged could not be sold extra judicially, even if *White Turpin* had been alive at the time said mortgage was closed by the sale at public auction. But *White Turpin* was dead nearly two years before said mortgage sale took place extra judicially, and it seems that they were condemned without any notice whatever, without any account having been rendered to them; and as a mortgage, it cannot support the plaintiff in his petitory action.

Said deed in trust also contains the substance of a mandate, and is a power of attorney given by *Turpin* and wife, appointing two attorneys—*Coburn* and *Dunbar*—to sell certain property therein described, upon the happening or fulling of certain conditions in a specified manner, and under said mandate, *Coburn*, one of the attorneys, purports to have made a sale of the land in controversy, with other lands in this State, amounting together to about three thousand one hundred and sixty acres, at public auction, in the State of Mississippi, to *D. G. Humphreys* and *Hamilton*, for the sum of two hundred and forty dollars. Said deed if it is to have effect here as a mandate, the sale made under it, is void, because it is a mandate for two attorneys to act, and gives no power for one to act if the other be alive. It is not pretended that *Dunbar* is not alive, but merely that he declined to act. It is a well established principle of our law, that when a mandate is given to two or more persons, they must all join in acting. See 2 La. Rep. 276, *Sample* v. *Lamb*.

The sale made by *Coburn*, as trustee or attorney in fact, under said deed, was executed on the 13th day of November, 1843, and passed titles to *Humphreys* and *Hamilton*, on the 16th November, 1843, [Trans. 38 to 41.] When *White Turpin* died, on the 4th day of April, 1842, [Trans. 89] nearly two years before the time of said sale, when all authority to act had expired by the death of *White Turpin*, his principal, all his acts then must be void, and he could convey no title whatever out of the heirs of *White Turpin*. See C. C. 2996.

It is well known that the question as to what weight and validity our law would give to those deeds in trust has frequently been a matter of deliberate consideration of our Supreme Courts, and in the case of *Ricks* v. *Goodrich*, 3 An. R., the points then presented are precisely the same as are submitted in this cause, with the exception that in that case the defendant had notice of the outstanding title, as evidenced by the deed in trust, which was recorded as a deed in "book of deeds," in the office of the recording officer in the parish where the land sought to be conveyed in said deed in trust was situated, and in this case defendant had no notice whatever, for the deed in trust was never recorded as a transfer in this State, and only as a mortgage in the office of the parish Judge and Recorder of Mortgages of Claiborne parish, Louisiana. But in the case referred to, after very able and elaborate argument by counsel of first eminence, the court decided : The effect of a deed of trust executed in another State, conveying land situated in this State, and recorded in the parish where the land lies, must be determined by our laws. C. C., 10. Such an instrument being an agreement by which mortgaged property is authorized to be sold extra judicially, is not valid under our laws, so far as third persons are concerned, whatever may be its effects between the parties. 3 An. R., 212.

Also, in the case of *Chewning* v. *Johnson*, (5 An., 678,) the court held: An assignment made in good faith by the laws of another State in favor of creditors domiciliated in that State, by a party also domiciliated there, will be enforced

HUMPHREYS
*v.*
CARAWAY.

on the property of the debtor in Louisiana which has been actually transferred to the assignee; provided, no injury arises to our own citizens, and not otherwise.

And, before dismissing this part of the subject, the defendant respectfully submits to your Honors, that even if our courts had not refused to give effect to deeds in trust as transfers of property in this State, and this deed in all other particulars formed a perfect link in the chain of plaintiff's title, still it is absolutely void, although the nullity be not formally directed, because it shows a contract made in contravention of a prohibitory law. See C. C., 12 and 11. That said deed in trust shows a contract entered into in the State of Mississippi, authorizing *Coburn* and *Dunbar* to sell lands situated in the State of Louisiana at public auction, when neither *Coburn* or *Dunbar* were regularly appointed auctioneers for this State, and at a time when the laws of this State prohibited such sales of property situated in this State, except done by an auctioneer of the State, under the penalty of five hundred dollars for each offence. Bul. & Cur. Digest, p. 32, art. 1, p. 33, art. 6; Greiner's Digest, 120, 128. It shows a contract, the palpable effect of which would be to defeat the revenue laws of this State, and derogate from the force of the law enacted for the purpose of securing to the revenues of the State the sum of one dollar for every hundred dollars of the value or price of the lands, tenements, etc., in this State, sold at public auction. See Bullard & Curry's Digest, p. 32, art. 2; Greiner's Digest, 121.

The deed of *Coburn* to *Humphreys* and *Hamilton* could convey no title, nor could the deed from *Humphreys* and *Hamilton* to plaintiff, because the parties making transfers to them were without title, and those deeds were not proven and not recorded until long after the defendant, *Caraway*, was in possession in good faith, and holding by a perfect title of record in himself.

On the 24th day of November, 1846, it appears that the Tax Collector of the parish of Bossier and State of Louisiana, sold one undivided half of the lands in controversy as the property of *John Stamps*, to satisfy State and parish taxes due said parish and State from the said *John Stamps*, when *Andrew Lawson* became the last and highest bidder, and the lands were adjudicated to the said *Lawson* as the purchaser, for the sum of $28 17, which said land the said *Lawson* permitted *John R. Evans* to redeem, as the agent of *John C. Humphreys*. But this deed is void, and can have no effect whatever, because there is no evidence that *John Stamps* ever owed the said State or parish any taxes whatever. There is no showing that said lands were ever assessed, or that any property of *John Stamps* was ever assessed in said parish by any lawful assessor of State or parish taxes, and consequently no forced sale, without strict proof that all the requirements of the law have been complied with, can bind *John Stamps*. Therefore, the redeeming of the said land by the plaintiff's agent, passed no title out of said *Stamps*, because said tax sale passed none. And if any title passed from said Stamps, the redemption could only take place for the benefit of said *Stamps* and his legal representatives, and if it can have any effect at all in law, it can only strengthen the original title in said *Stamps*, which inures to the benefit of the defendant, *Caraway*.

Further, the consideration expressed in the deeds of plaintiff, and under which he seeks to set up title, shows that they were never intended to be serious, or translative of property. The sum of one hundred and seventy-five dollars, given by the plaintiff for an undivided half of three thousand one hundred and sixty acres of land, worth four thousand two hundred dollars at the Land Office of the United States, and part of the same lands costing the defendant the sum of two dollars per acre, must strike the court as a consideration fictitious and nominal, and sounds of bad faith and simulation.

For all of which measures the defendant prays your Honors to annul, avoid, and reverse the judgment of the District Court, and render judgment in his favor, dismissing plaintiff's claim and suit, quieting him in his title and possession, and for all costs in both courts, and for general relief, etc.

BUCHANAN, J. (SPOFFORD, J., having been of counsel, recused himself.) This is a petitory action for land. Plaintiff claims title under *White Turpin*, in his lifetime a resident of Mississippi, who, on the 7th of May, 1840, conveyed to *Samuel Coburn* and *Joseph Dunbar*, also residents of Mississippi, by deed executed and recorded in that State, this land, with other tracts, situated in Louisiana, in trust, for the security of sundry persons named in the deed, who

were endorsers and sureties of said *Turpin;* the import of the deed being, that if any of the persons, named as beneficiaries, should have to pay anything, on account of the grantor, and should require a sale, then the two trustees named, *or the survivor of them,* should sell the property conveyed, or as much of it as they should deem necessary, at public auction, to the highest bidder, after six months previous advertisement.

On the 16th November, 1843, *Samuel Coburn,* made a deed of conveyance of the land to *David G. Humphreys* and *Charles D. Hamilton,* in which deed it was recited that the said *Samuel Coburn,* in his capacity of trustee, aforesaid, had advertised and sold the said land, at public auction, to the said *Humphreys* and *Hamilton,* as the highest bidders. *David G. Humphreys* and *Charles D. Hamilton* conveyed their title to plaintiff, on the 9th October, 1845.

A good deal of discussion has arisen at bar, upon the legal validity of deeds of trust made in Mississippi, to affect lands in Louisiana; and some decisions of our predecessors, upon that point, have been quoted, which do not appear to be very easily reconcileable. See 3 An., 216; 4 An., 259; 5 An., 679.

But we think that this question does not embarrass the decisionof the present case. Trusts, as we learn from the writers who have treated the subject *ex professo,* are extremely various in their objects. That which is presented to us in this record may, without the least violence, be viewed as a power of attorney to sell lands, which, assuredly, is not such a form of trust as can be supposed to conflict with our peculiar jurisprudence.

Viewed in this light, the objection urged by the counsel of defendant against the conveyance from *Coburn* to *Humphreys* and *Hamilton,* appears to be well taken. The mandate was joint, and could not be effectually exercised by one of the co-mandataries alone. 2 L. R., 276.

In the deed of trust under consideration, the power to sell is given to two persons, or to the survivor of them. Now, not only was the co-mandatary or co-trustee of *Coburn, Joseph Dunbar,* not dead, when *Coburn* took upon himself to make the sale alone, but it is proved, as well by the recitals of the deed, as by the testimony of *Coburn,* examined as a witness for plaintiff, that *Dunbar* declined to act under the deed of trust.

This defect in the title of plaintiff, might possibly have been cured by some subsequent act of *Turpin,* which would have amounted to a ratification. But nothing of the kind appears. On the contrary, the heirs of *Turpin* afterwards sold this land to another party.

And it is proper here to observe, that under the circumstances of the case, there is very little room for surprise at the heirs of *Turpin* having treated this land as their own, notwithstanding the sale by *Coburn.* The deed of trust specifies liabilities of *Turpin* nominally to the very large amount of one hundred and thirty thousand dollars. Yet it is not stated that one dollar of this amount is due to any of the beneficiaries. They figure merely as security for the payment of notes, held by different banks.

The property conveyed in trust, embraced large quantities of land in Louisiana and Mississippi; besides many slaves and much other personal property in the latter State. The trustees had only the right to make sales of this property upon the requisition of the beneficiaries. And the beneficiaries had only the right to make such requisition in case of having made payments for *Turpin* under their fidejussory obligations. The deed of *Coburn* to *Humphreys* and *Hamilton* recites, indeed, that a requisition had been made for the

sale. But this fact is shown in no other manner. And it certainly appears strange, that all the Louisiana lands contained in the trust, and amounting to several thousand acres, described by section, township and range, should have been knocked down in the presence of *Turpin's* creditors, to *Humpreys & Hamilton*, as the highest bidders, for a lumping price of two hundred and forty-two dollars and forty cents.

Judgment of the District Court reversed, and judgment for defendant, with costs in both courts,